United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENTIS A. TURNER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　　　／ | No. C 08-1269 SI<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT; REMANDING FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS ORDER** |

The parties have filed cross-motions for summary judgment in this Social Security appeal. Based upon the Court's review of the parties' papers and the administrative record, the Court hereby GRANTS plaintiff's motion, DENIES defendant's motion and REMANDS to the Social Security Administration for further proceedings consistent with this order.

**BACKGROUND**

On May 4, 2004, plaintiff filed a claim for Disability Insurance Benefits under Title II of the Social Security Act. Administrative Record ("AR") at 76-78. Plaintiff claimed a disability onset date of August 23, 2003, as a result of a herniated disc due to a workplace injury. *Id.* Plaintiff injured his back while loading milk trucks during his employment with Berkeley Farms. Following his injury, plaintiff returned to work at Berkeley Farms until March 18, 2004, when he re-injured his back. Dr. William Johnson, plaintiff's treating internist, took plaintiff off of work on March 29, 2004. *Id.* at 350. An MRI revealed that plaintiff had severe degenerative disc disease in the lumbar spine. *Id.* at 216. Plaintiff underwent conservative treatment, and when that was unsuccessful, on August 23, 2004, had

surgery, which was an instrumented lumbar arthrodesis at disc levels L4-S1 and implantation of a pedicle screw rod. *Id*. at 222-24. Plaintiff continued to have significant back pain, despite physical therapy and medication. *Id*. at 369. On December 5, 2005, Dr. Nottingham, who had performed the first surgery, again performed surgery on plaintiff to remove the pedicle screw rod instrumentation. *Id*. at 354. In March 2006, Dr. Nottingham prescribed aqua therapy for plaintiff as Dr. Nottingham thought that land-based therapy was "quite heavy" for plaintiff. *Id*. at 380.

In an October 31, 2006 letter, Dr. Nottingham wrote,

WORK RESTRICTIONS:

May 2006 seemed to be something of a turning point in this patient's recovery. The patient reported improvement. Although he was walking slowly, he was walking without a limp. There was still ongoing pain. Examination on May 22, 2006 showed forward flexion of fingertips to slightly below the knees. Extension and lateral bending was nearly 50% less than normal. By July 5th 2006, it was felt that the patient was no longer in a total/temporary disability category. However, the patient does have some work restrictions.

This patient should be lifting no more than 30 pounds. If a job required that patient to lift 20 pounds for approximately 2 hours out of an 8 hour day along with lifting 10 pounds for approximately 4 to 5 hours out of an 8 hours day, such job duties would not be recommended for this patient. To the extent that these activities require frequent bending or stooping (i.e. from one- third to two- thirds of the 8 hour work day), the patient would run a high risk of re-injury or aggravation of this back pain putting him back in the total/temporary disability category. Even bending to lift 20 pounds for up to one third of the day on a recurring basis is not recommended for patients such as Mr. Turner who has a significant loss of range of motion in the lumbar spine.

In addition there is a reasonable possibility that standing and walking while performing these lifting activities for 6 to 7 hours a day on a regular basis, could be beyond what the patient can safely tolerate and some kind of sedentary work is preferable from a medical standpoint. Patients with this kind of injury and medical history typically have difficulty with prolonged sitting, and Mr. Turner reports such difficulties. It is hoped that with vocational training and perhaps a work hardening program, this patient will be able to successfully reenter the workforce in the near future.

*Id*. at 387-88.

In a letter dated December 20, 2006, plaintiff's internist Dr. Johnson opined that plaintiff should be further restricted. "Having followed this patient for pain management, my current assessment has not changed since my 8/17/05 assessment. I simply don't think that Glen will be able to re-enter the work force in even a sedentary job, since sitting as well as standing will cause flare-ups in his back pain beyond what would be reasonably tolerable." *Id*. at 389.

After the Social Security Administration ("SSA") denied the applications initially and on

2

reconsideration, this matter was heard by an Administrative Law Judge ("ALJ") on January 4, 2007. At the hearing, the ALJ heard testimony by plaintiff, Medical Expert ("ME") Dr. Michael Gurvey, and Vocational Expert ("VE") Malcolm Brodzinsky. *Id*. at 15. By decision dated April 4, 2008, the ALJ found plaintiff disabled from March 19, 2004 through July 5, 2006. *Id*. The ALJ found that plaintiff was not disabled after July 5, 2006, and that he was capable of performing a range of "light" work.

In reaching this decision, the ALJ applied the five-step sequential evaluation procedure set forth in 20 C.F.R. § 416.920(a)(4). At the first step, the ALJ found that plaintiff had engaged in substantial gainful activity ("SGA") after his injury on August 23, 2003 through March 18, 2004. AR 17.[1] The ALJ found that plaintiff had not engaged in SGA after March 18, 2004. *Id.* At the third step, the ALJ found plaintiff to be disabled under Listing 1.04 through July 5, 2006. *Id.* The ALJ found that after July 5, 2006, plaintiff was not disabled because his condition no longer met or equaled any Listing. *Id.* In the fourth step of the evaluation process, the ALJ found that after July 5, 2006, plaintiff was unable to perform his past relevant work. *Id*. at 21. At step five, the ALJ found the SSA had met its burden to show that plaintiff could perform other work based on a residual functional capacity ("RFC") for "unskilled light jobs in the economy that can be performed sitting or standing, at will." *Id.* at 20.

The ALJ stated:

I further find that as of July 6, 2006, and pursuant to ME testimony, the severity of the claimant's condition no longer met or equaled any Listing and he had regained the RFC to perform a range of "light" work, with a need to change position about every two hours for 30-60 minutes at a time; only occasional stooping, crouching, crawling, kneeling, and balancing; no climbing of ladders, ropes or scaffolds; no driving or being around dangerous machinery; and no use of foot pedals/controls with the right lower extremity (20 CFR 404.1594). In view of the fact that no Listing is met or equaled, I find that medical improvement occurred and that medical improvement is related to the claimant's ability to work (20 C.F.R. 404.1594).

My judgment that medical improvement has occurred and that Mr. Turner can now perform alternate sitting and standing light work is supported by Dr. Nottingham's report at Exhibit 11F. Dr. Gurvey's testimony and opinion also supports medical improvement. There is really no persuasive treating physician opinion of record to the contrary. In December 2006, Dr. Johnson wrote a letter to counsel stating that his prior August 2005 RFC assessment for less than a full range of sedentary work was still valid, and nothing had changed (Exhibit 12F). Yet there is no evidence that Dr. Johnson examined the claimant during the intervening period. I asked counsel to submit updated treatment records from Dr. Johnson, but none were received. I therefore accord no weight to Dr. Johnson's December 2006 report/opinion.

---

[1] Plaintiff does not contest the ALJ's finding regarding the disability onset date.

*Id*. at 18. Based on the testimony of Mr. Brodzinsky, the ALJ concluded that plaintiff could perform two occupations, Small Parts Assembler (DOT #739.687-030) and Small Products Assembler (DOT #706.684-022). *Id*. at 19. The ALJ also found incredible some of plaintiff's complaints of pain.

On January 8, 2008, the Appeals Council denied plaintiff's request for review of the ALJ's decision. *Id.* at 6-8. Plaintiff then filed this action for judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g). Both parties have moved for summary judgment.

**LEGAL STANDARD**

A district court's review of a disability determination is limited, and a final administrative decision may be altered "only if it is based on legal error or if the fact findings are not supported by substantial evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Substantial evidence is that relevant evidence in the entire record "which a reasonable person might accept as adequate to support a conclusion." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). Substantial evidence consists of "more than a mere scintilla but less than a preponderance." *Young v. Sullivan*, 911 F.2d 181, 183 (9th Cir. 1990). The Court must consider the entire record, including evidence that both supports and detracts from the ALJ's decision. *See Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). However, the ALJ's decision must be upheld if the evidence is susceptible to more than one rational interpretation. *Allen v. Secretary of Health and Human Servs.*, 726 F.2d 1470, 1473 (9th Cir. 1984).

The reviewing court has discretion to remand a case for further evidence, or to award benefits. *Moore v. Comm'r Soc. Sec. Admin.*, 278 F. 3d 920, 926 (9th Cir. 2002). If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. *See Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

**DISCUSSION**

**I.    Plaintiff's Residual Functional Capacity ("RFC")**

  **A.    Dr. Nottingham's opinion**

Plaintiff contends that the ALJ's conclusion that plaintiff has the RFC to perform a range of

4

1  "light" work is not based on substantial evidence. Plaintiff argues that although the ALJ stated that the
2  RFC was supported by treating physician Dr. Nottingham's October 31, 2006 report (and relatedly, that
3  the ME Dr. Gurvey's RFC determination is consistent with Dr. Nottingham's October 31, 2006 report),
4  in fact the ALJ implicitly rejected the lifting limitations recommended by Dr. Nottingham. Defendant
5  argues that the ALJ's RFC, with its limitation that plaintiff change positions every two hours,
6  sufficiently reconciles Dr. Nottingham's opinion with that of the ME, Dr. Gurvey. In this way, the
7  defendant suggests, the ALJ is not rejecting Dr. Nottingham's opinion, but rather incorporating it into
8  the determination of the RFC.

9  At the hearing, the ME, Dr. Gurvey, opined that after March 2006, plaintiff "could occasionally
10 lift and carry 20 pounds. . . [a]nd frequently 10 pounds. He could sit, stand, and walk six out of eight
11 hours with the usual breaks and the ability to alternate perhaps every two hours." *Id.* at 404. The ALJ
12 found "pursuant to ME testimony [that plaintiff] had regained the RFC to perform a range of 'light'
13 work, with a need to change position about every two hours for 30-60 minutes at a time; only occasional
14 stooping, crouching, crawling, kneeling, and balancing; no climbing of ladders, ropes or scaffolds; no
15 driving or being around dangerous machinery; and no use of foot pedals/controls with the right lower
16 extremity." *Id.* at 18.

17 The Court finds that Dr. Nottingham's opinion is inconsistent with the ALJ's RFC. Dr.
18 Nottingham stated that plaintiff should not be lifting 20 pounds for 2 hours during an 8 hour day, and
19 should not be lifting 10 pounds for 4 to 5 hours out of an 8 hour day. AR at 387-88. The ALJ's RFC,
20 which incorporated the ME's testimony, requires plaintiff to "occasionally lift and carry 20 pounds . .
21 . [a]nd frequently 10 pounds." AR at 404. Social Security Ruling 83-10 states that "'Occasionally'
22 means occurring from very little up to one-third of the time" and that "'Frequent' means occurring from
23 one-third to two-thirds of the time." *Titles II and XVI: Determining Work to do Other Work – The*
24 *Medical-Vocational Rules of Appendix 2*, SSR 83-10, Soc. Sec. Rep. Serv. 24, 1983 WL 31251, at *5-6
25 (Nov. 30, 1982). Thus, Dr. Nottingham's opinion that plaintiff should not be lifting 20 pounds during
26 one quarter of the work day is inconsistent with an RFC requiring plaintiff to lift 20 pounds up to one
27 third of the work day. Similarly, Dr. Nottingham's opinion that plaintiff should not be lifting 10 pounds
28 during half of the work day is inconsistent with an RFC requiring him to lift 10 pounds up to two thirds

5

of the work day.

The ALJ can reject the treating physician's diagnosis only if he or she gives "legitimate reasons for doing so that are based on substantial evidence in the record." *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). Here, the ALJ believed that the RFC was consistent with Dr. Nottingham's opinion. However, the RFC is inconsistent with the lifting restrictions recommended by Dr. Nottingham, and thus the ALJ was required to explain why he deviated from those limitations. On remand, the ALJ shall reevaluate the RFC after giving due weight to Dr. Nottingham's opinion.[2]

### B.    Dr. Johnson's opinion

Plaintiff contends that the ALJ erroneously discounted the December 20, 2006 opinion of Dr. Johnson, plaintiff's internist. In that letter, Dr. Johnson states:

> I have continued to treat Glen for pain management of his lumbar disc disease since my last medical update on 8/17/05. . . . I have received and read Dr. Nottingham['s] report dated 10/31/06. I fully concur with Dr. Nottingham that a patient with Glen's medical history and clinical signs as well as subjective symptoms of pain would have at least the work restrictions outlined by Dr. Nottingham's 10/31/06 letter. I would add further restrictions due to Glen's pain symptoms which I find to be reasonably consistent with the degree of degeneration in his spine, the extensive surgical repair, and the lack of mobility in the lumbar spine. Having followed this patient for pain management, my current assessment has not changed since my 8/17/05 assessment. I simply don't think that Glen will be able to re-enter the work force in even a sedentary job, since sitting as well as standing will cause flare-ups in his back pain beyond what would be reasonably tolerable. It is possible to increase his pain medication, but that is not recommended from a medical standpoint and it would be doubtful that he could function safely or adequately in a work environment.

AR 389. Dr. Johnson also listed plaintiff's current pain medications.[3] *Id.* The ALJ "accord[ed] no

---

[2] If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the ALJ must give the treating physician's opinion controlling weight. 20 C.F.R. § 404.1527(d)(2); *see also* Social Security Ruling (SSR) 96-2p. An ALJ may reject the uncontradicted medical opinion of a treating physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (internal quotation marks and citation omitted). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, "[t]reating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 CFR [§] 404.1527." SSR 96-2p; *see id.*

[3] Consistent with plaintiff's testimony at the hearing, the pain medications listed in Dr. Johnson's letter are: "Norco, 10/325, one tablet five times a day"; "Motrin, 600 mg., one tablet four times a day as needed"; "Cymbalta, one tablet twice a day"; and "Valium, 5 mg, one tablet at night."

weight" to Dr. Johnson's December 20, 2006 opinion because "there is no evidence that Dr. Johnson examined the claimant during the intervening period [August 2005 - December 2006]." *Id.* at 18. The ALJ noted that he had asked counsel to submit updated treatment records from Dr. Johnson, but none were received. *Id.*

Plaintiff contends that the ALJ's rejection of Dr. Johnson's opinion was improper because Dr. Johnson was a treating physician, and the ALJ must give his opinion some weight or explain why that opinion is inconsistent with other substantial evidence in the record. Plaintiff relies on *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030 (9th Cir. 2003), in which the Ninth Circuit held that a doctor who had not examined the plaintiff "much more than a year before his report and was still employed to cure her" was still a treating physician whose opinion was entitled to greater weight than that of an examining or reviewing physician. *Id.* at 1038-39. The court rejected the Commissioner's argument that the doctor should not be considered a treating physician because he did not have an ongoing treating relationship with the patient. The Ninth Circuit noted that while the doctor at issue "may be placed relatively low on the continuum of treating physicians in this respect," the ALJ did not – and was required to – consider "whether Dr. Zwiefach saw Benton with a frequency consistent with accepted medical practice for this type of treatment, nor did he consider the evidence of Dr. Zwiefach's ongoing prescription and medication management of Benton's psychiatric evaluations and regular consultations with her therapists." *Id.* at 1039 (also noting that ALJ must take into account fact that doctor's report was also based in part on knowledge and opinion of medical team under his supervision).

Here, although counsel did not submit additional treatment records between August 2005 and December 2006, Dr. Johnson's December 20, 2006 letter stated that he has "continued to treat Glen for pain management of his lumbar disc disease since [Dr. Johnson's] last medical update on 8/17/05." AR at 389. In addition, at the hearing plaintiff stated that he "sees" Dr. Johnson approximately once a month. *Id.* at 397.[4] Along with Dr. Johnson's own statement that he "continued to treat" plaintiff, this is evidence of treatment. Under *Benton*, the ALJ was required to treat Dr. Johnson as a treating

---

[4] Plaintiff made this statement in response to a question by the ALJ prior to giving his testimony. Although plaintiff had not yet been sworn when he made this statement, the Court has no reason to doubt the truthfulness of this statement.

7

physician, and it was error to disregard his opinion without providing explicit reasons for doing so. "Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for 'clear and convincing' reasons. We have also held that 'clear and convincing' reasons are required to reject the treating doctor's ultimate conclusions. Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Benton*, 331 F.3d at 1036 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).

Defendant argues that the ALJ properly rejected Dr. Johnson's opinion because it was inconsistent with Drs. Nottingham's and Gurvey's opinions that plaintiff's condition had significantly improved. However, nowhere in the decision does the ALJ explain why he thinks Dr. Johnson's report is inconsistent with the other medical opinions. On remand, the ALJ shall reevaluate Dr. Johnson's December 20, 2006 opinion consistent with the Ninth Circuit's guidance in *Benton*.

### C. Credibility finding of plaintiff

Plaintiff contends that the ALJ's RFC was based on an improper negative credibility assessment of plaintiff. The ALJ questioned plaintiff's credibility based on (1) plaintiff's complaints about right leg pain; (2) plaintiff's ongoing worker's compensation litigation; (3) failure to receive Dr. Johnson's treatment records; and (4) failure to corroborate the "make work" claim for the period of August 23, 2003 through March 19, 2004. AR at 19.

The ALJ "must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ must consider the record as a whole and may not isolate a "specific quantum" of evidence to support his conclusion. *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984). The ALJ is "responsible for determining credibility and resolving conflicts in medical testimony [and] is likewise responsible for resolving ambiguities." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If the ALJ's interpretation of plaintiff's testimony is reasonable and supported by substantial evidence, it is not the Court's role to second-guess it, even where a contrary finding might be reasonable. *See Rollins v. Massanari,* 261 F.3d 853, 857 (9th Cir. 2001). Once plaintiff provides

1 medical evidence supporting an impairment that is likely to cause his symptoms, the ALJ may not
2 discredit plaintiff's subjective symptoms merely because of a lack of objective evidence fully supporting
3 these symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991) (en banc).

### 1.     Right leg pain

At the hearing, plaintiff was asked to describe his pain symptoms. Plaintiff responded "Constant, it's constant pain. It's – never seems to go away. I still have tingling in my right leg. Back of my right leg still tingles at times. Stiffness if I sit too long, stand too long." AR at 428. Plaintiff also testified that he feels a lot of pain in his lower back. *Id*. at 429. In connection with posing a hypothetical to the vocational expert containing various limitations based on plaintiff's condition, the ALJ asked plaintiff to confirm that he has ongoing pain in his right leg, but the ALJ did not ask any other questions regarding the right leg pain. *Id*. at 443.

In the decision, the ALJ made the following observations about plaintiff's complaints of right leg pain and tingling:

> At the hearing, the claimant complained of "constant" pain and tingling in his right leg; yet curiously, neither Dr. Nottingham's October 2006 report at Exhibit 11F nor the earlier records make any mention of (or give a medical basis for) right-sided sciatica, i.e., back pain radiating down the right leg. Dr. Johnson's records at Exhibits 8F, 12F do not refer to sciatica or sciatic-type symptoms. There is otherwise no independent medical basis for complaints of right leg pain and tingling. . . .
>
> . . .
>
> While the claimant certainly has some ongoing low back symptoms, I do not accept his allegations of disabling pain and limitations for the period July 6, 2006, and continuing. As discussed above, I am troubled by his right leg complaints, of recent vintage, that appear to have no medical foundation. Neither Dr. Nottingham nor Dr. Johnson set forth a basis for leg pain. Indeed, on October 6, 2005, Dr. Nottingham wrote that claimant was *not* having leg pain (Exhibit 9F/17). . . .

AR 18-19 (emphasis in original).

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, the ALJ must first find whether the claimant's condition could reasonably be expected to produce the pain or other symptoms alleged. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "[I]f the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons

9

for doing so." *Id.* (internal quotations omitted).

Here, the ALJ did not consider whether plaintiff's condition – degenerative disc disease – could reasonably be expected to produce pain and tingling in his leg.[5] Instead, the ALJ disbelieved plaintiff's testimony about leg pain and tingling because it was of "recent vintage." However, plaintiff did not testify about when he first experienced leg pain and tingling. The ALJ found it significant that Dr. Nottingham's October 6, 2005 report stated that plaintiff was not having leg pain. However, that fact is not probative of whether plaintiff testified truthfully on January 4, 2007 that he was experiencing leg pain and tingling. The Court further notes that there is no evidence whatsoever of malingering, and the ALJ himself noted that plaintiff's work history was "excellent." AR at 19.

### 2. Bias from workers' compensation claim

The ALJ also stated that plaintiff's "ongoing worker's compensation litigation may be providing an incentive, consciously or not, to not acknowledge his improved condition, even though based on his own doctors' records and opinions, and the ME's opinion, he is better." *Id.* Plaintiff contends that he should not be penalized for filing a worker's compensation claim, and that the ALJ's reasoning would dictate that every claimant be found not fully credible because they had filed a Social Security claim. Defendant does not address this issue.

The Court finds it was entirely improper for the ALJ to base an adverse credibility determination based on the simple fact that plaintiff was involved in ongoing worker's compensation litigation. Without a specific reason for this credibility finding targeted at plaintiff's circumstances, the credibility finding is arbitrary and not supported by substantial evidence. *See Aguiar v. Apfel*, 99 F. Supp. 2d 130, 138 (D. Mass. 2000) (a "[c]laimant's motivation cannot automatically be questioned merely because she has availed herself of whatever public assistance that the state or federal government provides" and holding: "That plaintiff's receipt of Worker's Compensation benefits played any role in drawing her credibility into question fails the substantial evidence standard."). Moreover, as a factual matter, the

---

[5] Based on the documents in the record, it appears that plaintiff's condition could reasonably be expected to produce the pain and tingling. *See, e.g.*, AR 269 (May 19, 2004 medical report stating that plaintiff was experiencing "left lower extremity pain" and "ongoing back pain with radiculopathy to lower extremities").

10

ALJ's statement that "even though based on his own doctors' records and opinions, and the ME's opinion, [plaintiff] is better" ignores the opinion of Dr. Johnson, who, as discussed *supra*, concluded that plaintiff's condition had *not* improved.

### 3. Failure to produce additional records from Dr. Johnson

The ALJ found it "noteworthy" that he had not received Dr. Johnson's treatment notes/records. AR at 19. The ALJ did not explain why the failure to produce additional records reflected negatively on plaintiff's credibility. On remand, the ALJ shall reevaluate this issue in conjunction with the ALJ's reassessment of Dr. Johnson's opinion as a treating physician.

### 4. "Make-work" claim

The ALJ also found it "noteworthy" that he had not received corroboration of plaintiff's "make-work" claim for the period from the alleged disability onset date of August 23, 2003 when plaintiff first injured his back, through March 19, 2004, when plaintiff re-injured his back. *Id*. The ALJ described plaintiff's "make work" claim as follows:

> Shortly after his injury, Mr. Turner returned to work at Berkeley Farms at what he termed "light duty" (Exhibit 12E). Mr. Turner essentially contends that his employer gave him "make work," *i.e.*, a job with no real duties or responsibilities, and in this manner just kept him on the payroll. No evidence has been received post-hearing to support the claim of "make work." In this regard, I reject counsel's argument at Exhibit 14E/2 [the criteria for an unsuccessful work attempt (UWA) are not demonstrated by this record; counsel is referred to 20 C.F.R. 404.1574(a)(1), Social Security Rulings (SSRs) 84-25, 05-2p]. Judging from the earning record, his wages must be presumed to be at the SGA-level (Exhibit 7D).

*Id*. at 16 (emphasis in original). In defending the ALJ's negative credibility assessment, defendant argues that "[p]laintiff made an unsupported and incredible allegation that he had been kept on his employer's payroll and paid substantial–not token–wages for essentially doing nothing for some eight months (August 2003 –March 2004)." Def.'s Mot. for Summ. J. at 6.

Plaintiff contends that the ALJ's negative credibility finding is not supported by substantial evidence because the ALJ misunderstood his argument regarding an earlier onset date. The ALJ found that "[j]udging from the earnings record, his wages must be presumed to be at the SGA-level (Exhibit 7D)." *Id*. at 16. However, in the administrative proceedings plaintiff had not argued that his wages

11

were not at the SGA level, but instead argued that his work between August 2003 and March 2004 was an "unsuccessful work attempt" under 20 C.F.R. § 404.1574(c) because the work was done under "special circumstances" in the form of special work duties especially suited to plaintiff's limitations and that he was permitted to perform at a lower standard of productivity or efficiency than other employees. *See id.* at 167. Plaintiff never claimed that following his injury Berkeley Farms gave him "a job with no real duties or responsibilities" AR at 16 (ALJ decision), or that he was paid "token wages for essentially doing nothing for some eight months." Def.'s Mot. for Summ. J. at 6. Instead, plaintiff stated that following his August 23, 2003 injury:

> I returned to work that week on light duty. My employer made up a job for me where I would stand or sit at the conveyor belt observing the milk crates coming out and watching for any damaged crates. I was taken off all work the following week for 3 weeks and then returned to light duty. I was assigned some other miscellaneous light duty tasks and some I couldn't do because I was not able to climb stairs and needed to take a lot of rest breaks (about one every ½ hour).
>
> I returned to my regular duties loading trucks shortly after the first of the year in 2004. I re-injured my back in March and was finally taken off of work altogether on March 18, 2004.

*Id.* at 158 (Jan. 2, 2006 affidavit of plaintiff). Plaintiff also asserts, and the record demonstrates, that between August 23, 2003 and March 18, 2004, plaintiff was paid full wages but that many hours of those wages were for sick leave. *Id.* at 94-101.

While plaintiff does not challenge the ALJ's finding of a disability onset date of March 19, 2004, plaintiff contends that it was improper for the ALJ to find him lacking credibility based on his failure to corroborate the "make work" claim[6] because there was no additional relevant documentation that plaintiff could have submitted. Although it is not clear from the ALJ's decision what additional "corroborating" evidence he found lacking, it appears that the ALJ may have been referring to missing pay stubs from September 2003 - March 2004. *Id.* at 393-94, 467. Plaintiff submitted many but not all of his pay stubs for this time period. *Id.* at 94-101. Plaintiff asserts that additional pay stubs would be irrelevant because the pay stubs only showed wages paid and taxes withheld, and do not contain any information regarding the nature of plaintiff's work during the "make work" period. *See id.* Plaintiff

---

[6] Given the actual nature of plaintiff's claim, the term "make work" claim is a misnomer. However, in the interest of consistency the Court will also use this term.

asserts that all he had to offer in support of "unsuccessful work attempt" argument was his own testimony. Plaintiff also asserts that the ALJ already had a full and complete record of plaintiff's earnings, and thus that the missing pay stubs were not necessary in that regard. *See id*. at 79-114.

The Court agrees with plaintiff that the ALJ's adverse credibility finding based on plaintiff's failure to "corroborate" his "make work" claim is not supported by substantial evidence because the ALJ mischaracterized the nature of plaintiff's claim. On remand, the ALJ should reevaluate whether, on this record, there was additional evidence plaintiff could have submitted to support his "unsuccessful work attempt" claim, and if so, whether the failure to submit that evidence bears on plaintiff's credibility.[7]

### D. Activities of daily living

Plaintiff contends that the ALJ's RFC is not consistent with plaintiff's activities of daily living. The ALJ described plaintiff's activities of daily living as follows:

> The claimant testified that he gets stiff when he sits too long. He gets "a lot" of low back pain when he sits too long. I do not doubt that was the case. He uses a medically prescribed cane for balance. He does some daily activities. The claimant testified that he is able to use an upright vacuum [although he has trouble with stairs], and can load/unload the dishwasher. He walks to a local park about two blocks away from his house. He uses a manual "picker" device to pick things off the floor.

AR at 19 (brackets in original). The ALJ stated that "claimant's admitted ADLs as recited above are not inconsistent with the decisional RFC set forth herein." *Id*. Although not specifically mentioned by the ALJ in his decision, plaintiff also testified that he can walk three to four blocks at a time and then needs to sit, and that he can stand for "[a] half hour, maybe up to an hour" before he needs to sit. *Id*. at 429-32. Plaintiff testified that he can do food shopping without unloading groceries, *id*., and that he has trouble lifting a gallon of milk unless he is on narcotic medication. *Id*. at 432. Plaintiff testified that he takes pain medication every day (Norco: five to six pills a day; Cymbalta: twice a day; Valium: once a day; Motrin: occasionally). *Id*. at 433-34. Plaintiff testified that the medication makes him tired, and that if he takes them at night (which he does) he "can't really sleep." *Id*. at 433. Plaintiff gets out of bed in the morning with the help with a mechanical bed. *Id*. at 436. Plaintiff is also fatigued throughout

---

[7] Because plaintiff does not challenge the ALJ's determination of the March 19, 2004 disability onset date, the ALJ's reevaluation on remand would be solely limited to how this issue relates to plaintiff's credibility.

the day and needs to rest "periodically during the day" for approximately a half-hour at a time. *Id*. at 434-55.

Plaintiff contends that his ADLs are not consistent with the "light" lifting that is required for an RFC at the light exertional level, which requires lifting ten pounds frequently and twenty pounds for up to one-third of a work-day. "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (claimant's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was evidence of claimant's ability to work). However, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, and many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (internal citations omitted).

The Court agrees that plaintiff's daily activities do not appear consistent with the "light" exertional level. The ALJ does not explain how someone with plaintiff's daily activity limitations could perform the lifting, stopping, and crouching requirements of the prescribed "light" RFC. Absent an adverse credibility finding on the issue of daily activities, on remand the ALJ should consider whether plaintiff's inability to lift a gallon of milk without narcotics would impede his ability to lift twenty pounds for up to one-third of a work-day. Similarly, the ALJ should consider whether plaintiff's need for a manual "picker" to pick up objects from the ground and a mechanical bed to get up from bed is consistent with occasional stooping, crouching, crawling, kneeling, and balancing. *See Gallant*, 753 F.3d at 1453 (ordering award of benefits for constant back and leg pain where claimant testified he cooked; could not sit over 10 minutes or stand over half an hour without back pain; could lift between 5 to 10 pounds; took several walks a day for about 20 to 25 minutes each, walking about a block or block and a half, resting and then returning home; and swam about 8 to 10 times a day averaging 5 minutes at a time).

## II. Vocational expert ("VE") testimony

14

Plaintiff raises several challenges to the ALJ's reliance on testimony of Vocational Expert Malcolm Brodzinsky. The VE testified that there were two occupations at the "light" level that plaintiff could perform that would permit alternating sitting and standing approximately every two hours for up to an hour at a time: Small Parts Assembler (DOT #739.687-030) and Small Products Assembler (DOT #706.684-022). The VE testified that the Dictionary of Occupational Titles ("DOT") does not specify whether these positions allow for sit/stand options, and that he was required to use his own expertise which was based on labor surveys that he had performed over the years. AR at 444, 453-64.

Plaintiff contends that the VE's testimony regarding the Small Parts Assembler and Small Products Assembler positions was not reliable because it could not be substantiated. However, a vocational expert's "recognized expertise provides the necessary foundation for his or her testimony. Thus, no additional foundation is required." *Bayliss v. Barnhart,* 60 F.3d 1428, 1217 (9th Cir. 2005); *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (An ALJ "may take administrative notice of any reliable job information, including the services of a vocational expert.").

Plaintiff also contends that the VE's testimony regarding the Small Parts Assembler and Small Products Assembler positions could not be relied upon because both of those positions require using machinery that would be dangerous for plaintiff to operate given his medication. Plaintiff notes that the ME Dr. Gurvey, whose testimony the ALJ fully credited, testified that plaintiff "should not operate any machinery." AR at 405. In his hypothetical to the VE, the ALJ excluded occupations that entail "driving or dangerous machinery." *Id*. at 443. The Small Parts Assembler "[l]oads and unloads previously setup machines, such as arbor presses, drill presses, taps, spot-welding machines, riveting machines, milling machines, or broaches, to perform fastening, force fitting, or light metal-cutting operation on assembly line." Dictionary of Occupational Titles 739.687-030 (4th ed. 1991). The Small Products Assembler position requires "using handtools, portable powered tools, or bench machines. Performs fastening, force fitting, or light cutting operations, using machines such as arbor presses, punch presses, taps, spot-welding or riveters." *Id*. at 706.684-022.

Plaintiff contends that he cannot safely perform either of these assembly positions while under the influence of narcotic pain medication, and that neither the ALJ nor the VE explained how a person taking plaintiff's medication could safely perform these jobs. Defendant responds that the DOT does

15

not define "dangerous machinery," and asserts that the occupational descriptions "indicate that these jobs do not require, in particular, working around moving mechanical parts and exposure to other hazards such as electric shocks." Def's Motion for Summary Judgment at 8. Defendant also asserts that according to Appendix B of the DOT, the Small Parts Assembler position falls in a category of jobs which require workers to use "body members, handtools, and/or special devices to work, move, or carry objects or materials" and require little need for judgment.

Whether plaintiff could safely perform the assembler positions is a factual matter that must be resolved on remand. The record currently contains no information to support the ALJ's determination that plaintiff could perform these positions given plaintiff's medications. Further, in light of the ME's testimony that plaintiff should not operate *any* machinery, the record strongly suggests that he could not. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (When proposing a hypothetical, the ALJ "must propose a hypothetical that is based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations."). On remand, the ALJ shall evaluate, based upon vocational expert testimony, whether there are any positions that plaintiff can perform given all of his limitations, including his medications, and based on the ME's testimony that plaintiff should not operate any machinery.[8] *Cf. Delgado v. Heckler*, 722 F.2d 570, 574 (9th Cir.1983) ("A man who cannot walk, stand or sit for over one hour without pain does not have the capacity to do most jobs available in the national economy.").

///

---

[8] Defendant asserts that any error here would be harmless because at the hearing the VE also cited occupations in the "sedentary" range. However, the ALJ did not discuss these sedentary occupations in the decision. Moreover, given the scope of the issues on remand, the Court cannot conclude that this error was harmless.

16

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS plaintiff's motion for summary judgment, DENIES defendant's motion, and REMANDS for further administrative proceedings consistent with this order. Docket Nos. 9 & 11.

**IT IS SO ORDERED.**

Dated: May 12, 2009

SUSAN ILLSTON
United States District Judge